HENRY C. PITNEY, JOHN R. EMERY, FREDERIC W. STEVENS, EDMUND B. LEAMING, EUGENE STEVENSON, JAMES J. BERGEN AND LINDLEY M. GARRISON, VICE-CHANCELLORS.

THE MAYOR AND COMMON COUNCIL OF THE CITY OF NEWARK et al.

*v.*

THE ERIE RAILROAD COMPANY et al.

[Submitted December ——, 1906. Decided April 4th, 1907.]

1. A bill was filed by a city setting forth its control of public streets therein, and that a railway company, by its charter, constructed a railroad across a street of said city; that the franchises and rights of that

447

company are now vested in one of the defendants, and that the other defendant has leased the said property and franchises, and charging that the defendants are obligated to perform the duties imposed on the railroad company which constructed the road; that across said street the defendants now have laid six tracks; that by the increase of population the street in question is used by a great number of people, and that crossing it at grade with those six tracks forms a serious impediment and obstruction to travel on the street; that by the ninth section of the charter of the railway company which constructed the said crossing that company was required to construct and keep in repair good and sufficient passages over or under said railway where any public or other road should cross the same, so that the passage of carriages, horses and cattle across the railway should not be impeded, and praying that this court should, by injunction, compel the defendants to effect the crossing of the tracks across said street in some other manner than at the grade of the street.— *Held*, (1) that upon these statements the jurisdiction of this court to make the decree prayed for is conferred by section 29 of the revised act concerning railroads, approved April 14th, 1903; (2) that the conferring of such jurisdiction upon this court was within the power of the legislature.

2. The duty imposed upon the railway company which laid the tracks in question was not a duty completely performed by an original construction in conformity therewith, but it was a continuing duty, varying according to the changed circumstances, and requiring a crossing to be sufficient to permit the passage across the railway without impediment.

3. Such a bill is not objectionable because it fails to assert that the crossing of said street in a manner other than at grade is practicable, or because it does not specify what crossing the city seeks to have decreed. If the jurisdiction of the court is made to appear by the statements of the bill, the practicability of a safe crossing and the determination of what crossing should be made is for the court to determine.

4. Such a bill is not objectionable because it fails to state that notice of the intention to file such bill was given to the defendants. The notice prescribed by section 29 of the revised Railroad act relates only to the proceeding to construct such crossings by the municipality if the railroad to which notice is given does not, within a reasonable time, itself construct them. The notice fixes the commencement of the time, and has no relation to the application to this court to fix and determine how the crossing should be constructed under the law governing the railroad company.

5. The statements of the bill present a case for the jurisdiction of this court over the joint use, by the public and by a railroad company, of the same land. Where two public users are in conflict, this court may determine how the users may be continued so as to be safe and convenient.

On demurrer to bill.

*Mr. Joseph Coult,* for the complainants.

*Mr. Cortlandt Parker, Mr. Charles L. Corbin* and *Mr. Cortlandt Parker, Jr.,* for the defendants.

MAGIE, CHANCELLOR.

The bill demurred to sets forth the power of the city of Newark and its board of street and water commissioners to control and regulate public streets and highways in that city, and among others, a street called Summer avenue.

The bill then proceeds to state the incorporation of the Montclair Railway Company, by an act of the legislature, approved March 18th, 1867, which company, under the authority thereby conferred, laid and constructed a railroad from Montclair, in Essex county, to the Hudson river, in Hudson county, and that subsequently, by various foreclosures, the property and franchises of the Montclair Railway Company became vested in the New York and Greenwood Lake Railroad Company, one of the defendants, which latter company thereby became obligated to perform the duties imposed on the Montclair Railway Company by the act above cited, and that afterward, the Erie Railroad Company, a corporation of the State of New York, the other defendant, leased the property and franchises of the New York and Greenwood Lake company, and thereby acquired the rights and privileges given to the Montclair Railway Company by said act, and so it also became obligated to perform all the duties imposed upon the Montclair Railway Company by said act.

The bill further states that two main tracks now operated by the Erie Railroad Company on the division called the Greenwood Lake Division, which are owned by the New York and Greenwood Lake company, and were originally constructed by the Montclair Railway Company, cross the street known as Summer avenue, at grade, and that the Erie Railroad Company has laid, and is now using, additional tracks, to the total number of six tracks, at the crossing of Summer avenue.

The bill further states that, by the development of the northern part of the city of Newark, the public street known as Summer avenue has greatly increased in use and importance, and is now used by a great number of people at that crossing.

The bill recites the ninth section of the act incorporating the

29

Montclair Railway Company, which requires the company to construct and keep in repair, good and sufficient bridges over and under the said railway, where any public or other road should cross the same, so that the passage of carriages, horses and cattle across the said railway shall not be impeded thereby.

The bill further states that the crossing of Summer avenue, at grade, with six sets of railroad tracks forms a serious impediment and obstruction to travel upon the said street, and that defendants have not constructed, and do not keep in repair, good and sufficient bridges over or under the said railroad at Summer avenue, and have not performed the duties imposed upon them in this regard; that the crossing over the tracks at Summer avenue, as now laid, is difficult and dangerous, because of the frequent passage of passenger and freight trains across said street at a high rate of speed, and that persons attempting to cross the tracks are frequently detained at this crossing for a long space of time; that crossing this street is attended with great inconvenience and great danger, and that a different method of crossing, which will be safe for the public using the street, is imperatively demanded.

The bill further refers to section 29 of the "Act concerning railroads" (Revision of 1903), approved April 14th, 1903 (*P. L. 1903 p. 645*), and although it omits a portion of the said section, it states the provision contained in that section which prescribes that, when any railroad shall not properly construct and maintain the bridges or other crossings of highways by its railroad tracks, as required by law, it shall be lawful for the governing body of the municipality wherein such crossings are located, by a suit in equity, to compel the specific performance of the duties imposed by law upon such company with respect to the construction, maintenance and repair of such bridges and crossings.

The bill proceeds to charge that it is the duty of the defendants to have the crossing at Summer avenue made so as not to impede public travel and the public use of the said street, and that defendants should have made some other crossing by depressing or elevating the tracks of their railroad, or by making necessary changes in the grade of the street.

The bill further charges that, where the right of the public to use a public highway, and the right of a railroad company to operate its railroad across that highway, are in conflict, as in the case of this crossing, this court has power to regulate the manner of crossing so as to protect the rights of both parties and insure the safety of the public.

Upon these statements the prayer of the bill is that defendants be required, by mandatory injunction under the direction of this court, to effect the crossing of the present tracks over Summer avenue in some other manner than at the grade of the street, and for this purpose to construct and keep in repair good and sufficient bridges or passages over or under said railroad tracks, as at present constructed across Summer avenue, so that the passage of carriages, horses and cattle upon said street or highway shall not be impeded thereby. There is also a prayer for further relief.

To this bill the defendants filed joint and several demurrers, and for causes of demurrer they show various objections, which, I think, may be summarized under five heads:

*First.* That upon the statements of the bill the defendants must be presumed to have made a suitable crossing, under the requirements of law, at the time they laid their tracks across Summer avenue, and that the bill discloses no duty imposed by law upon them, by reason of the changed conditions in the increase of the trains upon defendants' railroad, or in the increase of population and the consequent increase in the number of people passing across the tracks at that crossing.

*Second.* That this court has no statutory or equitable jurisdiction to prescribe another crossing in substitution of the crossing shown in the bill.

*Third.* That the bill is defective because it fails to show that an overhead or undergrade crossing at Summer avenue can be practically constructed, and further fails to point out the manner in which the defendants should properly construct the crossing at Summer avenue demanded by the bill.

*Fourth.* That the twenty-ninth section of the revised Railroad act of 1903, so far as it purports to authorize this court to prescribe a crossing not at grade at Summer avenue, is uncon-

stitutional and void, as attempting to confer on this court the prerogative proceeding by *mandamus* out of the supreme court and as unlawfully assigning to this court legislative powers; and

*Fifth.* That by the provisions of that section the complainants, before proceeding to file this bill, were required to give notice to the defendants, which does not appear, by this bill, to have been given.

The first contention raises the question of the true construction of the clause contained in the ninth section of the act of incorporation of the Montclair Railway Company, under which act that corporation obtained the franchises which the defendants now exercise, and under which the tracks were laid and are now maintained across Summer avenue at grade. The language in which the legislature expressed its will is the following:

"It shall be the duty of the said company to construct and keep in repair good and sufficient bridges over or under the said railway where any public or other road shall cross the same, so that the passage of carriages, horses and cattle across the said railway shall not be impeded thereby."

Was the duty thus imposed completely performed by the construction of "bridges" under or over the railway where it crossed Summer avenue, which were, at the time of their construction, "sufficient" to prevent the public use from being "impeded" by the railway? It is impossible to give such a construction to the language of this clause. The bridges which it is the duty of the defendants to construct are to be sufficient to permit the passage, in the use of the public easement, of carriages, horses and cattle, so that it shall not be impeded by the railway. If the bridge at first provided becomes insufficient for the required purpose, whether because of the increased business of the railway company, or of the increased use of the public easement in the street, the duty, which is a continuing one, has not been performed.

The ninth section of the original charter of the Central Railroad Company of New Jersey contains a clause identical, in all substantial effects, with the clause of the ninth section of the

Montclair Railway act above recited. It came under review in *Central Railroad Co.* ads. *State, 32 N. J. Law (3 Vr.) 220.* The supreme court, in the opinion of Chief-Justice Beasley, declared that the clause imposed a duty on the railroad company in favor of the public which was continuous, and the performance of which must be measured by circumstances. The prescribed duty was, it was held, to keep at all times and under all circumstances the public highways at the points where they cross the railroad, in a condition fit for safe and convenient use. The doctrine was again expressed in the supreme court in *Reed* v. *Camden, 53 N. J. Law (24 Vr.) 322,* and when that case came into review in the court of errors and appeals, while the judgment of the supreme court was reversed, there was no criticism of the doctrine. Chancellor McGill, in this court, in construing a similar clause in the General Railroad act, held that if the crossing constructed originally was not of sufficient capacity it must, from time to time, be enlarged as public accommodation demands. *Raritan* v. *Port Reading Railroad Co., 49 N. J. Eq. (4 Dick.) 11.* In *Clark* v. *Elizabeth, 61 N. J. Law (32 Vr.) 565,* the opinion of Chief-Justice Beasley was cited with approval. Vice-Chancellor Grey declared that the doctrine of a continuing duty, under such legislative prescription, had been adopted by our courts (*West Jersey and Seashore Railroad Co.* v. *Waterford, 64 N. J. Eq. (19 Dick.) 663*), and his opinion giving expression to this view, in *Palmyra* v. *Pennsylvania Railroad Co., 62 N. J. Eq. (17 Dick.) 601,* was adopted by the court of errors and appeals in affirming the decree made on his advice, in *63 N. J. Eq. (18 Dick.) 799.* Vice-Chancellor Van Fleet, in *Newark* v. *Delaware, Lackawanna and Western Railroad Co., 42 N. J. Eq. (15 Stew.) 196,* declared, and Vice-Chancellor Emery, in *Swift* v. *Delaware, Lackawanna and Western Railroad Co., 66 N. J. Eq. (21 Dick.) 34,* assumed, that the doctrine of a continuing duty in such cases is beyond doubt. See, also, *S. C., 66 N. J. Eq. (21 Dick.) 452.*

In my judgment the bill is not open to the objection made upon this ground.

The claim that no statutory jurisdiction has been conferred on this court to prescribe the crossing to be constructed if any

railroad company shall not properly construct bridges or other crossings of highways as required by law, may be, for the present, passed by with the observation that by section 29 of the revised Railroad act of 1903, the legislature has undertaken to confer, and has conferred by language which is incapable of any other construction, precisely the jurisdiction in question. It is contended, however, that in so doing the legislature exceeded its constitutional powers. This contention will hereafter be considered. That the twenty-ninth section of the act above cited does, by its terms, confer such jurisdiction, has been settled in this court. *Metuchen* v. *Pennsylvania Railroad Co., 71 N. J. Eq. (1 Buch.) 404.*

The cause of demurrer, which asserts that this court has no equitable jurisdiction to grant the relief sought by this bill, is evidently aimed at the fourteenth paragraph of the bill, in which the complainants charge that where the right of the public to use a public highway and the right of a railroad company to operate its railroad across such highway are in conflict, this court has the power to regulate and direct the manner of crossing so as to protect the rights of both parties and insure the safety of the public. Such a jurisdiction in this court was obviously asserted and acted upon in *Newark* v. *Delaware, Lackawanna and Western Railroad Co., 42 N. J. Eq. (15 Stew.) 196,* for upon no other ground can the opinion of Vice-Chancellor Van Fleet, on whose advice the decree in that case was made, be vindicated. What was said in the opinion of Mr. Justice Reed, in *New York and Greenwood Lake Railroad Co.* v. *Montclair, 47 N. J. Eq. (2 Dick.) 591,* with respect to the general equitable power of the court, was unnecessary to the decision, for, as was pointed out, the jurisdiction asserted was put solely upon certain legislation which was held to be ineffective. In the subsequent case in this court of *West Jersey and Seashore Railroad Co.* v. *Atlantic, &c., Railroad Co., 65 N. J. Eq. (20 Dick.) 613,* such jurisdiction was directly asserted and the decree was made thereon. Under those decisions this contention cannot avail defendants.

It is next contended that the bill is defective in two respects, *first,* because it fails to show that an overhead or undergrade

crossing of Summer avenue can be practically constructed, and *second,* because it fails to point out the manner in which defendants should properly construct the crossing of Summer avenue. With respect to this objection the complainants, in my judgment, are not compelled to assert that one or the other crossing is capable of being practically constructed. It is sufficient if their bill presents a case for the exercise of the jurisdiction of this court, leaving for its determination what kind of crossing should be decreed. It would be equally inappropriate, in my judgment, for complainants to set out in the bill the mode of crossing that they think defendants should adopt. If they present a case for the exercise of jurisdiction, they must accept such mode of crossing as the court shall decree, and to seek a decree for a particular mode of crossing might hamper the court and prevent the exercise of its power, whether statutory or equitable, if the mode which the court is asked to decree is not, in its judgment, practicable or fair.

The next contention challenges the constitutionality of the legislation contained in section 29 of the Railroad act above cited. It is argued that the legislature thereby undertook to confer on this court the power which the supreme court may exercise by its prerogative writ of *mandamus,* and the power to fix the mode of crossing by railroads of public highways, which it is claimed the legislature alone can do. I think I am not at liberty to deal with these questions. The legislation contained in section 29 has been pronounced to be within the constitutional power of the legislature in this court, and that decision is binding on me. *Metuchen* v. *Pennsylvania Railroad Co., ubi supra.* Other legislation of similar scope and effect has also been pronounced constitutional in this court, and that decision has been approved by the court of errors and appeals. *Palmyra* v. *Pennsylvania Railroad Co., ubi supra.* See, also, *Eckert* v. *Perth Amboy and W. Railway Co., 66 N. J. Eq. (21 Dick.) 437; S. C., 65 N. J. Eq. (20 Dick.) 777.*

It is lastly urged in support of the demurrer that the bill is defective in that it fails to state that notice had been given by complainants to defendants of the intention to proceed by suit in equity to obtain relief. This requires a construction of the

language of section 29 of the Railroad act. In my judgment such notice as is thereby prescribed relates only to the proceeding to construct or repair such crossings by the municipality, if the railroad noticed does not, within a reasonable time after such notice, itself construct or repair. That must be done within a reasonable time, the commencement of which is at the giving of the notice. Such notice has a reasonable relation to the proceeding by the municipality to construct or repair, but has no reasonable relation to the application to this court to fix and determine how the crossing should be constructed under the provisions of the law governing the railroad company. This objection cannot prevail.

None of the causes being found good, the demurrer must be overruled, with costs.

With the above case were argued two other cases presenting the same questions. In one of them the bill was filed by the same complainants against the same defendants, and relief of the same kind was thereby sought in respect to the crossing of Fourth avenue in Newark by the same railroad. In the other of them the bill was filed by the same complainants against the Pennsylvania railroad and the New York Bay railroad, and relief of the same kind was thereby sought in respect to the crossing of Clinton avenue in Newark by the railroad owned and operated by the companies last named. The bills were identical in substance with that filed in this case. Demurrers were interposed to each of them, raising the same questions above considered. For the reasons hereinbefore stated each demurrer must be overruled, with costs.